**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Alice Archunde,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-24-01993-PHX-JAT

**ORDER**

Pending before the Court is Plaintiff Alice Archunde's ("Plaintiff") appeal from the Commissioner or the Social Security Administration's ("SSA," "Commissioner," or "Defendant") denial of Social Security benefits. (Doc. 8-3). The appeal is fully briefed (Doc. 11; Doc. 13; Doc. 14), and the Court now rules.

**I. BACKGROUND**

**A. Factual Overview**

Plaintiff was born on November 24, 1975, and she was 44 years old on her date last insured of December 31, 2019. (Doc. 8-3 at 20, 28). She has at least a high school education. (*Id.* at 28). On October 30, 2020, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning January 1, 2019. (*Id.* at 18). Denial of Plaintiff's claim occurred initially on March 3, 2021, and upon reconsideration on May 28, 2021. (*Id.*) Plaintiff filed a written request for a hearing before an ALJ, which occurred via online video on September 28, 2022. (*Id.*) An impartial vocational expert (VE) also appeared and testified in the hearing. (*Id.*) The ALJ issued a

decision on August 1, 2023, finding that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Social Security Act. (*Id.* at 29). On June 14, 2024, the SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision and adopted the ALJ's decision as final. (Doc. 11 at 2). Plaintiff filed the present appeal following this unfavorable decision. (Doc. 1).

**B. The SSA's Five-Step Evaluation Process**

To qualify for social security disability insurance benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or

equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is her ability perform physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

**C. The ALJ's Application of the Factors**

Here, at Step One, the ALJ concluded that the record established that Plaintiff did not engage in substantial gainful activity since January 1, 2019, her alleged onset date. (Doc. 8-3 at 21).

At Step Two, the ALJ determined that Plaintiff had severe impairments, including degenerative disc disease and lumbar spondylosis, status-post fusion; sacral/sacrococcygeal disorder; history of obesity; hypertension; and hypothyroidism. (*Id.* at 21).

At Step Three, the ALJ found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled a listed impairment in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (*Id.* at 22). The ALJ then found that Plaintiff had the RFC to perform the full range of sedentary work as defined in defined in 20 C.F.R. § 404.1567(a). (Doc. 8-3 at 22).

At Step Four, the ALJ found that Plaintiff was capable of performing past relevant work as an academic counselor. (*Id.* at 27). At Step Five, the ALJ found that in addition to past relevant work, alternatively, there were other jobs existing in significant numbers in the national economy that the Plaintiff could perform, given her age, education, work experience, and RFC. (*Id.* at 28). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act from the alleged onset date through December 31, 2019. (*Id.*)

**II. LEGAL STANDARD**

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495

F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

Plaintiff's appeal raises two issues: (1) the ALJ's explanation allegedly lacks substantial evidence to support the rejection of Dr. Gallardo-Prado's assessment, including a failure to describe the consideration of supportability and consistency factors; and (2) the ALJ allegedly did not provide specific clear, convincing reasons, supported by substantial evidence, for her rejection of Plaintiff's subjective symptom testimony. (Doc. 11at 14, 20). The Court considers each claim in turn.

### A. Dr. Gallardo-Prado

Plaintiff argues that the ALJ committed harmful error by rejecting Dr. Gallardo-Prado's opinion without providing sufficient explanation supported by substantial evidence. (Doc. 11 at 14). Defendant conversely asserts that the "ALJ reasonably evaluated [Dr. Gallardo-Prado's] medical opinion." (Doc. 13 at 4).

#### 1. Legal Standard for Evaluation of Medical Opinions

Courts in the Ninth Circuit previously distinguished among treating physicians, examining physicians, and non-examining physicians, generally giving the greatest weight to the opinions of treating physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This distinction was referred to as the "treating physician rule." *See Regula v. Delta Family-Care Survivorship Plan*, 266 F.3d 1130, 1139 (9th Cir. 2001), *cert. granted*, *vacated sub nom. Regula v. Delta Family-Care Disability & Survivorship Plan*, 539 U.S. 901 (2003). However, "in March of 2017, the [SSA] amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01,

2017 WL 168819, *5852–57 (Jan. 18, 2017)). Claims filed on or after March 27, 2017, must adhere to the amended regulations. (*Id.*) These regulations state that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from … medical sources." 20 C.F.R. §§ 404.1520c, 416.920c.

In addition to the abrogation of the "treating physician rule," as of March 2017, the amended SSA regulations specify that the ALJ must "consider all medical opinions according to several enumerated factors, including whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources." *Alonzo*, 2020 WL 1000024, at *3. Supportability and consistency are the "most important factors," and the ALJ must explain how she considered the evidence in light of these two factors for a medical source's opinions. 20 C.F.R § 404.1520c(b)(3).

Moreover, the Ninth Circuit recently determined that in cases governed by the amended SSA regulations above, the "specific and legitimate" standard is also no longer applicable. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). In *Woods*, the Ninth Circuit concluded the following:

> Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Id.* (quotations and internal citations omitted). Subsequently, it is not required that an ALJ provide "specific and legitimate reasons" to reject a treating physician's assessment. *Id.* at 791.

As discussed previously, the ALJ, not the reviewing court, is responsible for resolving ambiguities and conflicts in medical testimony and the medical record. *See Andrews*, 53 F.3d at 1039. Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630; *see also Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir 1992) ("if

the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ") (citations omitted).

**2. The ALJ's Evaluation of Dr. Gallardo-Prado's Medical Opinion**

Plaintiff claims that the ALJ erred in rejecting Dr. Gallardo-Prado's medical opinion because she failed to provide sufficient explanation supported by substantial evidence in the following ways: (1) the ALJ failed to explain and connect her earlier discussion of Plaintiff's medical records to any specific inconsistency with Dr. Gallardo-Prado's assessed limitations (Doc. 11 at 17); (2) the ALJ did not explain what portion of Dr. Gallardo-Prado's assessment was supported, or "what observations failed to support Dr. Gallardo-Prado's specific assessed limitations" (*Id.* at 16); (3) the ALJ inappropriately discounted Dr. Gallardo-Prado's assessment for failing to explain why his opined limitations extended back to January 2019, "despite an absence of corroborating medical evidence during the relevant period" (*Id.* at 18); and (4) in lieu of providing sufficient rationale for rejecting Dr. Gallardo-Prado's opinion, the ALJ improperly found an agency examiner's opinion to be "partially persuasive." (*Id.* at 19).

At Step Three, the ALJ summarized Dr. Gallardo-Prado's assessment as follows:

> In September 2022, Dr. Cuauhtemoc Gallardo-Prado conducted an examination (two and a half months before the claimant's lumbar surgery) (Exhibit 20F). According to Dr. Gallardo-Prado, since January 2019, the claimant was only capable of: lifting up to twenty pounds; carrying up to fifteen pounds; sitting for two hours and standing or walking for two hours (with an allowance for alternating between sitting, standing, or walking up to every twenty-one minutes with up to a fifteen-minute rest period following these position changes); frequently using the hands; and occasionally using the feet; less than occasionally bending or stooping; and frequently reaching (Exhibit 20F/8-9). In addition, the examining physician indicated that the claimant: was "inhibit[ed]" in completing more than one and two-step jobs; would have moderately severe interruptions of work pace; would require one to two-hour rest periods due to headaches or mental fatigues; and would miss four or five days of work a

> month (Exhibit 20F/8-9; *see* Exhibit 20F/6-7 where Dr. Gallardo-Prado diagnosed the claimant with "anxiety and depression"; *see also* Exhibit 20F/7 where Dr. Gallardo-Prado generally concluded that the claimant was unable to work).

(Doc. 8-3 at 25). Next, later in Step Three, the ALJ discussed the persuasiveness of Dr. Gallardo-Prado's opinion:

> The opinion of Dr. Gallardo-Prado is *unpersuasive*. Although (1) it is somewhat supported by the examining physician's findings on examination (nearly three years after the date last insured), (2) it is not consistent with the relevant evidence in the record (such as the treatment records during the period in question or the claimant's statements regarding her symptoms, activities, and limitations, including her ability to lift and carry up to thirty pounds and the absence of allegations regarding restrictions of the hands), as discussed in detailed above. (Exhibit 20F/7, 8-9; *see* Hearing for Claimant's testimony regarding her ability to lift and carry; *see, e.g.*, Exhibit 4F/8 where, in August 2019, the claimant denied experiencing depression and anxiety; *see also* Exhibit 3E/6 where, in February 2021, the claimant denied difficulty using her hands). It is noted that Dr. Gallardo-Prado did not explain why his limitations extended all the way back to January 2019, despite an absence of corroborating medical evidence during the relevant period (*see, e.g.*, Exhibits 1F; 2F; 3F; 4F; 5F; 6F which did not document upper extremity or psychiatric abnormalities; compare Exhibit 20F/8-9 where Dr. Gallardo-Prado included both manipulative and mental limitations).

(Doc. 8-3 at 27–28).

Plaintiff argues that the ALJ "failed to explain and connect her earlier discussion of Plaintiff's medical records to any specific inconsistency with Dr. Gallardo-Prado's assessed limitations." (Doc. 11 at 17). Defendant counters that "the ALJ identified specific evidence that contradicted the specific limitations opined by Dr. Gallardo-Prado." (Doc. 13 at 8). The Court agrees with Defendant. For example, in her summary of Dr. Gallardo-Prado's opinion, the ALJ noted that "[a]ccording to Dr. Gallardo-Prado, since January

2019, the claimant was only capable of lifting up to twenty pounds [and] carrying up to fifteen pounds," and that Dr. Gallardo-Prado diagnosed the claimant with "anxiety and depression." (Doc. 8-3 at 25) (citing Ex. 20F, 6–9). Then, a few paragraphs later, in her discussion of the persuasiveness of Dr. Gallardo-Prado's opinion, the ALJ stated the opinion was "not consistent with the relevant evidence in the record … such as claimant's statements regarding her symptoms, activities, and limitations including [Plaintiff's] ability to lift and carry up to thirty pounds … as discussed in detail above ( … *see* Hearing for [Plaintiff's] testimony regarding her ability to lift and carry; *see, e.g.*, Exhibit 4F/8 where, in August 2019, [Plaintiff] denied experiencing depression and anxiety … )." (*Id.* at 27–28). Thus, the ALJ identified specific portions of Dr. Gallardo-Prado's opinion and demonstrated their inconsistency with specific elements of Plaintiff's symptom testimony.

Similarly, the ALJ identified specific portions of the Dr. Gallardo-Prado's medical opinion and other medical evidence of record, highlighting their inconsistency. For example, the ALJ wrote that Dr. Gallardo-Prado's opinion was "not consistent with relevant evidence in the record (such as the treatment records during the period in question … )." (*Id.*) The ALJ then cited specific medical evidence "during the relevant period" and specific portions of Dr. Gallardo-Prado's opinion: "Exhibits 1F; 2F; 3F; 4F; 5F; [and] 6F[,] … did not document upper extremity or psychiatric abnormalities; compare Exhibit 20F/8-9[,] where Dr. Gallardo-Prado included both manipulative and mental limitations." (*Id.*) The ALJ described the evidence that she identified as being inconsistent with Dr. Gallardo-Prado's opinion in greater detail earlier in Step Three of her decision. (*Id.* at 23–24) (describing, individually, Plaintiff's medical records at Exhibits 1F, 2F, 3F, 4F, 5F, and 6F, none of which, per the ALJ and per the Court's review, contain evidence of upper extremity or psychiatric abnormalities).

The inconsistency between Dr. Gallardo's medical opinion and Plaintiff's symptom testimony and the inconsistency between his opinion and the medical evidence of record constitute valid reasons to reject Dr. Gallardo-Prado's medical opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (affirming the ALJ's

rejection of a medical opinion that was inconsistent with the claimant's testimony and objective medical evidence in the record). That the ALJ explained her reasoning through internal references across separate paragraphs is inconsequential, as the Court could "reasonably discern" her "path" of reasoning. *See Alaska Dept. of Env't. Conservation v. E.P.A.*, 540 U.S. 461, 497 (stating that if an ALJ's decision is made with "less[-]than[-]ideal clarity, a reviewing court will not upset the decision on that account if [her] path may reasonably be discerned."); *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (stating that the ALJ is only required to discuss and evaluate the evidence that supports his conclusion; she is not required to do so in a specific location within the decision).

Plaintiff also argues that the ALJ erred because she did not explain what portion of Dr. Gallardo-Prado's assessment was supported "and therefore should have been credited and/or incorporated into the RFC," or "what observations failed to support Dr. Gallardo-Prado's specific assessed limitations." (Doc. 11 at 16). The Court disagrees. First, ultimately, it is the ALJ's responsibility to translate and incorporate clinical findings into an RFC. *Baker v. Comm'r of Soc. Sec. Admin.*, No. CV-17-00116-PHX-DGC, 2018 WL 2119167. *3 (D. Ariz. May 8, 2018) (citing *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2014)). Additionally, the SSA regulations do not require "a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Mertens v. Colvin*, No. CV-15-02296-PHX-DGC, 2016 WL 4168762 (D. Ariz. Aug. 8, 2016) (citing *Gilbert v. Colvin*, No. CV-15-02130-PHX-DLR, 2016 WL 3067767). Thus, even if the ALJ did not incorporate into the RFC portions of Dr. Gallardo-Prado's opinion that the evidence of record supported, the ALJ did not err because it was within her discretion to refrain from doing so.

Second, even if, as Plaintiff alleges, the ALJ erred in failing to fully explain how Dr. Gallardo-Prado's opinion was (or was not) supported by the evidence, as discussed above, the Court has concluded that substantial evidence supports the ALJ's decision to reject Dr. Gallardo-Prado's opinion due to its inconsistency with both Plaintiff's symptom testimony and with other medical evidence. This itself is sufficient for the ALJ to conclude

that Dr. Gallardo-Prado's opinion was unpersuasive. *See Woods*, 32 F.4th at 792–94, n.4 (indicating that even where an ALJ provides no supportability analysis for a medical opinion, the ALJ may properly find the opinion unpersuasive so long as there is an inconsistency finding supported by substantial evidence); *see also Thompson v. Comm'r of Soc. Sec. Admin.*, No. 21-08076-PHX-SPL, 2022 WL 3098039, *6 (D. Ariz. Aug. 4, 2022) ("Even though the ALJ erred in his consideration of supportability, he properly rejected the opinion based on consistency."). Accordingly, because it would be ultimately inconsequential to the non-disability determination, any error on the part of the ALJ in addressing the supportability factor for Dr. Gallardo-Prado's opinion is harmless and does not warrant reversal. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (stating an error is harmless if it is inconsequential to the non-disability determination) (citations omitted); *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (stating a district court "may not reverse an ALJ's decision on account of a harmless error.")).

Plaintiff additionally claims that the ALJ improperly rejected Dr. Gallardo-Prado's assessment for failing to explain why his opined limitations extended back to January 2019, "despite an absence of corroborating medical evidence during the relevant period." (*Id.* at 18). Plaintiff contends that Dr. Gallardo-Prado's report "provided this explanation where he confirmed he reviewed [Plaintiff's] medical history and reviewed medical records related to [Plaintiff's] spinal imaging and surgical history." (*Id.*) Defendant argues that "Dr. Gallardo-Prado did not say he reviewed any records that were from the relevant period," and "the earliest record he reviewed was a lumbar spine MRI from June 2021." Upon the Court's review of Dr. Gallardo-Prado's assessment, it appears that either interpretation is reasonable. For example, Dr. Gallardo-Prado stated in his assessment: "Based on … review of the available medical records, the patient's symptoms and related limitations described in this report were present as of January 2019." (Ex. 20F at 3). A reasonable interpretation of this statement is that Dr. Gallardo-Prado's assessment included "available medical records" extending back to January 2019. Conversely, as Defendant points out, the earliest specific treatment or imaging record to which Dr. Gallardo-Prado cites in his opinion are

indeed spinal MRIs from June 2021. (Ex. 20F at 2). Thus, whether Dr. Gallardo-Prado explained why his opined limitations extended back to January 2019 is subject to more than one rational interpretation. As such, the Court defers to the ALJ's conclusion in this regard. *Orn*, 495 F.3d at 630 (stating that when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld.").

Finally, Plaintiff suggests the ALJ erred because, in lieu of providing sufficient rationale for rejecting Dr. Gallardo Prado's opinion, the ALJ improperly found agency examiner Dr. Cunningham's opinion "partially persuasive." (Doc. 11 at 19). Plaintiff argues that the ALJ failed to explain the "evaluation of the supportability and consistency factors as they relate to Dr. Cunningham's opinion when the record as a whole supported Dr. Gallardo-Prado's assessment." (*Id.*) At Step Three, the ALJ summarized Dr. Cunningham's opinion as follows:

> Dr. Keith Cunningham performed an internal medicine consultative examination in January 2023, a month[-]and[-]a half after the claimant's lumbar surgery (Exhibit 21F). Dr. Cunningham, who noted the claimant's history of morbid obesity (with a maximum weight of three-hundred and thirty pounds) status-post 2008 gastric bypass surgery, restricted the claimant to light work but only four hours of sitting and four hours of standing or walking with occasional postural activities (but no ladders, ropes, and scaffolds and no crawling) and limited work around heights (Exhibit 21F/5-7).

(Doc. 8-3 at 26). A few paragraphs later in Step Three, the ALJ outlined the persuasiveness of Dr. Cunningham's opinion:

> The opinion of Dr. Cunningham is only *partially persuasive* (Exhibit 21F/5-7). While, unlike Dr. Gallardo-Prado, Dr. Cunningham did not specifically indicate that his limitations applied to the relevant period, his assessment, (1) while generally supported by his findings on examination (three years after the date last insured and also following the claimant's lumbar surgery), (2) is not altogether consistent with the relevant evidence in the record (such as the imaging

> studies and treatment records during the period in question), as previously discussed. In light of the relevant medical evidence, the undersigned finds that a restriction to sedentary work is appropriate.

(*Id.* at 27).

The Court finds Plaintiff's argument to be without merit. As outlined above, while Dr. Cunningham limited Plaintiff to light work, the ALJ found Plaintiff to be more limited in her RFC. (*Id.* at 22) ("[Plaintiff has] the [RFC] to perform the full range of sedentary work as defined in defined in 20 C.F.R. § 404.1567(a)"); *see* 20 C.F.R. § 404.1567(a) (defining "sedentary work" as more limiting than "light work" in regard to physical exertion). As such, any error on the part of the ALJ in finding Dr. Cunningham's opinion "partially persuasive"—including any alleged error in failing to explain this finding in light of whether Dr. Gallardo-Prado's opinion was supported by the "record as a whole"—is harmless. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citation omitted) (indicating an error is harmless if it is "inconsequential to the ultimate non[-]disability determination.").

**B. Plaintiff's Subjective Symptom Testimony**

Plaintiff asserts that the ALJ erred by rejecting Plaintiff's subjective symptom testimony "in the absence of specific, clear, and convincing reasons supported by substantial evidence in this record as a whole." (Doc. 11 at 20). Conversely, Defendant argues that "[s]ubstantial evidence supports the ALJ's evaluation, and she reasonably discounted Plaintiff's subjective symptom complaints." (Doc. 13 at 12).

**1. Legal Standard for Evaluation of Subjective Symptom Testimony**

In assessing the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal citation and quotation marks omitted). Next, if the claimant satisfies the

first test, then "the ALJ may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation and quotations marks omitted). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain the credibility determination. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Here, in his written decision, the ALJ summarized Plaintiff's subjective symptom testimony, paraphrasing as follows:

> The claimant alleges that she experiences: pain in the low back radiating to the bottom of the feet; numbness in the low back; pain in the hands and feet; nerve "pain and spasms"; depression; anxiety; and problems with sleep, memory, understanding, and concentration (Exhibits 2E/2; 3E/2; Hearing). As a result, she claims that she: could only lift and carry thirty pounds; could sit for thirty to forty minutes at a time; could stand for twenty minutes at a time; could walk for a few hundred feet or thirty minutes at a time; occasionally used a cane (after transitioning from a walker); had to lie down for up to two hours, "many" times a day; and had difficulty climbing stairs, bending, kneeling, squatting, twisting, reaching, following instructions, completing tasks, and handling stress and changes in routine (Exhibit 3E/1, 2, 6, 7, 8; Hearing). The claimant also indicates that her medication caused sleepiness, distractibility, and fatigue (Exhibit 3E/8; Hearing).

(Doc. 8-3 at 23).

As noted above, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms and did not make a finding that she was malingering. (*Id.* at 30). But the ALJ concluded that Plaintiff's statements regarding the severity of her symptoms were "not entirely consistent" with medical and other evidence in the record and consequently found her less limited than she had alleged.

(*Id.*) Because the ALJ did not make a finding that Plaintiff was malingering, the Court must determine whether the ALJ gave specific, clear, and convincing reasons for partly discrediting Plaintiff's symptom testimony.

An adverse credibility determination is sufficiently specific if the ALJ identifies "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Factors an ALJ may consider when determining credibility include, among others, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* at 1163 (citations omitted). An ALJ may "discredit the claimant's allegations" so long as the ALJ "makes specific findings that are supported by the record." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (cleaned up). The "specific, clear, and convincing" standard is satisfied where the "ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

**2. The ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony**

Plaintiff argues that the ALJ erred in rejecting Plaintiff's subjective symptom testimony, alleging the ALJ failed to: (1) "connect anything specific in the medical record to a specific inconsistency with any particular portion of [Plaintiff's] testimony" (Doc. 11 at 21); (2) explain how normal findings in the medical record "canceled out the significance" of abnormal findings that were consistent with Plaintiff's symptom testimony (*Id.* at 22); (3) and did not show that Plaintiff spent a substantial part of a typical day engaged in activities inconsistent with disabling limitations. (*Id.* at 23). Defendant counters that the ALJ did not err because substantial evidence supported her conclusion that while Plaintiff had significant limitations, Plaintiff was not as limited as she claimed. (*See* Doc. 13 at 14).

**a. Medical evidence**

First, Plaintiff argues that the ALJ failed to connect "anything specific in the medical record to a specific inconsistency with any particular portion of [Plaintiff's] testimony." (Doc. 11 at 21). However, the Court disagrees. In more than one instance, the ALJ pointed to specific testimony provided by Plaintiff and demonstrated that she did not find the testimony credible by linking it to specific contradictory evidence in the medical record. To illustrate, the ALJ wrote: "At the first hearing, on September 28, 2022, the [Plaintiff] testified she … *was able to lift and carry thirty pounds* … compare Exhibit 20F/8–9 where, only two weeks earlier, Dr. Gallardo-Prado determined that the claimant could not lift more than twenty pounds or carry more than fifteen pounds." (Doc. 8-3 at 25). As an additional example, the ALJ indicated: "[I]n September 2019, a pain management nurse practitioner diagnosed [Plaintiff with] 'anxiety [and] depression" but, but … *see* Exhibit 4F/8 where, in August 2019, the claimant denied depression and anxiety; *see* Hearing where [Plaintiff] testified that her last mental health treatment was in 2009" (Doc. 8-3 at 22). The Court acknowledges that the examples of specific testimony and contrasting medical evidence that the ALJ provides are not all in the same location within the ALJ's decision; however, this does not preclude them from serving as substantial evidence to support the ALJ's rejection of Plaintiff's symptom testimony. *Kennedy*, 738 F.3d at 1178 (stating that the ALJ is only required to discuss and evaluate the evidence that supports his conclusion; she is not required to do so in a specific location within the decision); *Labine v. Comm'r. of Soc. Sec.*, No. CV-19-04528-PHX-JZB, 2020 WL 6707822, *4 (D. Ariz. Nov. 16, 2020) ("The Court reads the ALJ's decision as a whole, and not just one sentence of it in a vacuum."); *see Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Plaintiff additionally claims that the ALJ failed to explain how normal physical examination findings "canceled out the significance" of other abnormal physical findings that "were consistent with Plaintiff's symptom testimony concerning chronic pain that

required her to lay down during the course of a workday." (*Id.* at 22). However, the ALJ was not required to do so; instead, the ALJ was required to identify what parts of Plaintiff's testimony are "not credible and what evidence undermines the claimant's complaints." *Ghanim*, 763 F.3d at 1163. Furthermore, the ALJ did not conclude that any abnormal clinical finding was "canceled out" or rendered insignificant. (*See generally* Doc. 8-3). Rather, the ALJ properly weighed the medical evidence—including both normal and abnormal findings—as a whole in making her credibility and RFC determinations. *See Maneri v. Comm'r of Soc. Sec. Admin.*, No. CV-23-08054-PCT-DGC, 2024 WL 413547, *10–11 (D. Ariz. Feb. 5, 2024) (quoting *Fuentes v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00147-PHX-JJT, 2023 WL 5013109, *4 (D. Ariz. Aug. 7, 2023) (citing *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("Plaintiff argues that the ALJ erred by failing to specifically discuss why the cited [abnormal] findings 'cancelled out' other [supportive] findings. However, 'the ALJ does not need to discuss every piece of evidence.' Instead, the ALJ was required to explain [his finding of inconsistency] in a manner supported by substantial evidence, which he did.")).

**b. Activities of Daily Living**

Plaintiff also argues that the ALJ erred in rejecting Plaintiff's subjective symptom testimony because it was inconsistent with her reported activities of daily living. (Doc. 11 at 23). The ALJ found that Plaintiff's activities of daily living contradicted the level of impairment she claimed, stating:

> According to a February 2021 function report, the claimant was able to take care of her daughter's online schooling for most of the day; cook for her daughter, clean up after her, and do her laundry; help take care of her dog (with her daughter's help); have meals with her daughter; run errands; shop in stores and by computer; go to doctor appointments; and handle money (Exhibit 3E/1, 2, 3, 4, 5). The claimant's activities of daily living are not as limited as would be expected given her allegation of disabling limitations.

(Doc. 8-3 at 25). The ALJ also wrote:

> The claimant's allegations of generally disabling symptoms and limitations are not substantiated by the evidence in the record, including … the claimant's activities (including taking care of her daughter; helping to take care of her dog; performing some household chores; preparing meals; driving a car; going to the bank; and shopping in stores).

(*Id.* at 27).

In the Ninth Circuit, a claimant's engagement in daily activities is a valid factor for an ALJ to consider in assessing his credibility. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Though it is not required that a claimant "vegetate in a dark room" to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (quotation omitted), the claimant's daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," even when those activities suggest some difficulty functioning. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)). Hence, the Court finds that although Plaintiff stated that she had difficulty functioning, the ALJ properly discounted her credibility to the extent that her daily activities were inconsistent with an inability to work in *any* capacity. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of [his] personal needs, prepare easy meals, do light housework and shop for some groceries ... may be seen as inconsistent with the presence of a condition which would preclude *all* work activity.") (citations omitted; emphasis added).

Plaintiff further contends that, the ALJ erred because she did not find that a substantial part of Plaintiff's typical day was spent engaged in activities inconsistent with Plaintiff's claimed limitations and that the ALJ's "simple list of activities, without any information as to the demands, frequency, or duration of those activities, does not show any contradiction with [Plaintiff's] reported symptoms." (*Id.* at 24). However, though the evidence regarding the exact duration, frequency, and level of demand involved in each of

Plaintiff's daily activities may be ambiguous, the ALJ's determination that Planitiff's activities conflict with the severity of her reported symptoms is reasonable. Thus, the Court declines to second-guess the ALJ's conclusion in this regard, despite the possibility that the evidence could result in inferences more favorable to Plaintiff. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding that, even when the record was ambiguous about the frequency and duration of Plaintiff's engagement in daily activities, if the ALJ's interpretation regarding the activities' consistency with Plaintiff's symptoms was reasonable, the court would not second-guess it).

Here, the ALJ reached a reasonable determination based on substantial evidence that Plaintiff's daily activities were incompatible with the severity of her alleged symptom-s, i.e., the extent of her alleged impairment-induced limitations. Accordingly, Plaintiff's daily activities are a clear and convincing reason to discount his symptom testimony. *See Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

### C. Alternative Proceedings

Finally, Plaintiff requests remand for calculation of benefits pursuant to the credit-as-true rule, or in the alternative, further administrative proceedings. (Doc. 11 at 25). However, because the Court is upholding the ALJ's decision, the Court denies Plaintiff's request for remand without considering the credit-as-true doctrine. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017) (stating a direct award of benefits is only appropriate "when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for a denial of benefits").

## IV. CONCLUSION

Considering the foregoing,

/ / /

/ / /

/ / /

**IT IS ORDERED** that the ALJ's opinion is AFFIRMED, and the Clerk of the Court shall enter judgment accordingly.

Dated this 18th day of February, 2025.

James A. Teilborg
Senior United States District Judge